THE STATE *ex rel.* RADCLIFF *et al., Appellants*, v. RADCLIFF.

Curator: LIABILITY ON BOND. A., by instrument of writing purporting to be his will, made certain of his grandchildren who were children of B. devisees of some tracts of land. B. was appointed curator of the estate of his children coming from A., and gave bond as such curator to account for all moneys coming from said estate. He collected rents from said land, as well as moneys from the sales of same made under order of the probate court. Subsequently the will was set aside by judgment of the proper court. *Held,* in an action on the curator's bond by the children, to recover the moneys received by B. from the rent and sales of the lands, that they could not recover.

*Appeal from Cass Circuit Court.*—HON. C. W. SLOAN, Judge.

AFFIRMED.

*Railey & Burney* and *George Bird* for appellants.

(1) Defendants are liable in this case jointly. Bliss on Code Pleadings, secs. 70, 73, 74 and 75 ; *State ex rel. v. Thornton*, 56 Mo. 325. (2) A minor is entitled

to his estate on arriving at age, and he may sue his guardian before final settlement. *State ex rel. v. Rasswaag*, 3 Mo. App. 11; *State ex rel. v. Thornton*, 56 Mo. 325 ; *State ex rel. v. Roeper*, 9 Mo. App. 21; s. c., 82 Mo. 57; *State ex rel. Hoshaw*, 86 Mo. 193; *Flach v. Fassen*, 3 Mo. App. 561. (3) But relators were not compelled to sue as soon as they became of age. A guardian is held to be the trustee of an express trust, and all the authorities agree that the statute of limitations does not begin to run in favor of a trustee of an express trust until such trust is denied by some open act of the trustee, which in this case was at the time the guardianship was discontinued, which was in August, 1880. Wood on Limitations, sec. 200; p. 413; secs. 204 and 205, p. 425; *Smith v. Ricords*, 52 Mo. 581; *Smith v. Ricords*, 56 Mo. 553; *Buren v. Buren*, 79 Mo. 538; *State ex rel. v. Hoshaw*, 86 Mo. 193; *Norton v. Thompson*, 68 Mo. 143. (4) Securities on a curator's bond are liable for the amount received by their principal before as well as after the bond was given. *State, etc., v. Paul's Ex'r*, 21 Mo. 51; *State, etc., v. James*, 82 Mo. 509. (5) The possessory rights of relators and the prospect of their ultimate success in the suit contesting the will were of some value; such interest could be sold and would support a good and valuable consideration. *Tapley v. McPike*, 50 Mo. 589. (6) George Radcliff, in the sale of his ward's lands, sold only such rights as the wards had, and no more, and did not diminish the distribution share of said George Radcliff by so much as one dollar. Rorer on Void Judicial Sales, secs. 48 and 49; Freeman on Executions, sec. 301; Freeman on Co-tenancy & Partition, sec. 547; *Ostereberg v. Trust Co.*, 93 U. S. 424. (7) An agent receiving money or property of, for and in the name of his principal is precluded from denying the latter's title. Wharton on Agency, sec. 242; *Hancock v. Gomez*, 58 Barb. 490; *Railroad v. Durant*, 95 U. S. 576; *Oliver v. Pratt*, 3 How. 333.

*A. Comingo* for respondent.

BRACE, J.—This is an action on a guardian's bond. George Radcliff, the principal in the bond, made default, and the case was dismissed as to him, and tried before the court without a jury upon the answer of the other two defendants, Elijah Davis and Thomas Courtney, his sureties. The issues were found and judgment rendered for said defendants, and the relators appealed.

Benjamin Radcliff died in the state of Ohio in the year 1869 seized of a large landed estate in Pickaway county in that state, leaving surviving him a number of children, of whom the said George Radcliff was one, and several grandchildren, his only heirs-at-law. By an instrument in writing, purporting to be his last will and testament, there were devised to the relators, children of the said George, certain tracts of his said land therein described. This instrument was proven as the will of the said Benjamin in the probate court of Pickaway county in said state on the twenty-eighth of June, 1869. At that time the said George with his family was residing in Cass county, Missouri, where he continued to reside until the commencement of this suit. On the sixteenth of August, 1870, a suit was instituted in the common pleas court of said Pickaway county to set aside said instrument of. writing by some of the heirs-at-law of the said Benjamin, to which all the other heirs-at-law, including the said George, and the relators as devisees under said instrument, were made parties.

It seems that some of the real estate devised to George's children was rented at the time of Benjamin's death, and that, during the year 1870, the said George received, either from the tenants directly or through the attorneys he had employed to represent him in the will contest, according to his evidence introduced by the plaintiff, sums amounting to two hundred and ten dollars. On the fifteenth of March, 1871, the said

George was by the probate court of Cass county appointed curator of the estate of his children, the relators herein, and executed the bond sued on with said defendants, Davis and Courtney, as his sureties, conditioned that he, the said George, should faithfully discharge his duties as curator of the estate of said children left them by their grandfather, the said Benjamin, and account for, pay and deliver all money and property of said estate as required by law, etc. And according to his testimony, in the years 1872 and 1873, he received further sums for rent, amounting to $531.33. On the eighteenth of February, 1874, the said George, through his attorneys, procured an order to be made by the probate court of Pickaway county authorizing him as guardian of his said children to sell their real estate in said county at private sale, one-third cash, one-third to be paid in two, and one-third in three years, deferred payments to bear six per cent., and to be secured by mortgage on the premises sold.

On the sixteenth of March, 1874, a report of sales under said order of court was made to said court, through the attorneys of the said George, of the several tracts so devised to different parties, and thereupon the sales were approved by said court, and said guardian was ordered to execute deeds to the purchasers upon their severally executing mortgages upon the premises purchased to secure the deferred payments. The evidence tends to show that the attorneys collected from the purchasers the first payment on these sales, and about the first of May, 1874, paid the same over to George. The amount which he testifies he received from those payments and additional rents on account of the supposed estate of his children about this time was fifteen hundred and seventy-six dollars.

On the twelfth of May, 1874, he and his wife and his oldest daughter executed a quitclaim deed to each of three of these purchasers for the tracts of land that each had

purchased; these deeds were delivered to these pur-
chasers. No guardian's deed was ever delivered to any
of them, nor did they ever execute mortgages to secure
the remainder of the purchase money, or did they ever
pay any of it. On the twenty-second of June, 1874,
the will suit coming on for trial in the common pleas
court of Pickaway county, the said instrument of writ-
ing purporting to be the last will and testament of
Benjamin Radcliff was by the verdict of the jury and
the judgment of said court set aside and for naught
held, and thereafter, on the twenty-seventh of June,
1874, a suit was instituted in said court by some of the
heirs-at-law of the said Benjamin against the others, in
which the said George was made a party defendant, for
partition among such heirs of all the real estate of
which said intestate died seized including the lands
purported to have been devised by said instrument of
writing to the relators, in which suit in the answer of
the guardian of one of the minor defendants it was
charged that the said George had since the death of
said intestate received and converted to his own use
two thousand dollars of the rents and profits of said last-
mentioned lands, and it was prayed that, in the parti-
tion of the real estate sought to be divided, he be
compelled to account for the same, and the said George
in his answer set out that, after the probate of the
instrument of writing aforesaid and before it was
annulled, he, as guardian of his children, by a proceed-
ing in the probate court of Pickaway county, had sold
the land thereby devised to his children to third per-
sons, who are innocent purchasers, and prayed that
said tracts be included and set off to him in his portion
of the real estate of his father sought to be devised.

In the decree of partition the interest of the said
George was found to be an undivided eighth of all the
lands of which his father died seized, and, upon report
of the commissioners appointed to make partition, said

lands, having been found not susceptible of division in kind, were ordered to be sold, were sold, and on the twelfth of May, 1875, the proceeds other than the share of George were ordered to be distributed among the other heirs-at-law, parties to the suit, which was accordingly done, and deeds made to the purchasers. Out of the share of George Radcliff, the court ordered payment of certain judgment liens created by him in favor of other parties to the suit, reserved the question of the further distribution of his share, ordered that the parties who had purchased of him as guardian be made parties defendant and granted them leave to file answers and cross-petitions, which was done.

The record fails to show these petitions and answers, or what, if any, action was had by the court upon them. It seems that the purchasers from George were in possession of the lands purchased from him and again became purchasers of the same lands at the partition sale, and after an order subsequently made, allowing one of them for improvements made before the latter sale and releasing him from rent, the partition suit after several continuances went off the docket. The net share of George Radcliff in the proceeds of the partition sales amounted to fifty-three hundred and seventy dollars. The judgment liens ordered to be paid out of it amounted to twenty-nine hundred and forty-seven dollars. The balance seems to have been paid out by the sheriff and attorneys, as appears by a balance sheet filed as an exhibit with the deposition of one of the lawyers to divers persons on sundry accounts; some of it to Geo. Radcliff, but what amount if any went to reimburse those purchasers who made the first payment to him on the sales made by him as guardian does not appear. Two of these purchasers, however, admit that they received something back out of his share.

At the August term, 1880, of the probate court of Cass county, the said George Radcliff, as curator of the estate of the relators, filed a written statement; that

since his appointment no money, property or effects, real or personal, belonging to said minors or either of them, had come to his knowledge or possession, and praying that said curatorship be discontinued, and it was accordingly so ordered by said court.

On the tenth of June, 1886, this suit was commenced, the breach assigned in substance being that the said George Radcliff, as curator of the relators, came into the possession of the sum of $2317.23 from the estate of the said Benjamin Radcliff, deceased, belonging to the said relators, which he failed to account for, but appropriated the same to his own use, and has failed, neglected and refused and still doth refuse to account for and pay the same to relator. The circuit court failed to discover in the foregoing facts that the said curator had received from the estate of Benjamin Radcliff, or from any other source, any sum of money belonging to the said relators, and we confess our inability in those facts to make such a discovery. The defendants, the sureties of said curator, bound themselves that he should account to them for all moneys that might come into his possession from that estate belonging to them, but they did not bind themselves that he should account to them for any moneys that might come into his hands from any source that did not belong to them. The fact that he may have received moneys from that estate or from other persons which did not belong to him, and which he may have converted to his own use, and which the persons to whom it did belong may not be able to recover from him, cannot have the effect of rendering these defendants liable on their bond. The evidence fails to show that the relators ever had any estate for the preservation of which this bond was given. As there was nothing to preserve there was nothing to waste, and if nothing was wasted the sureties are liable for nothing.

The judgment of the circuit court is affirmed. All concur.